UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMAAL MUHAMMAD,              )
                             )
            Petitioner,       )
                             )
      vs.                     )        Case No. 4:14 CV 1072 ACL
                             )
DEAN MINOR,[1]                )
                             )
            Respondent.       )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Jamaal Muhammad for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.

### I.  Procedural History

Muhammad is currently incarcerated at the Moberly Correctional Center in Moberly,

Missouri, pursuant to the Sentence and Judgment of the Circuit Court of the City of St. Louis,

Missouri.   (Respt's Ex. D at 104-07.)

On August 19, 2009, the State charged Muhammad as a prior and persistent offender with

forcible rape and sodomy and, in the alternative, statutory rape and sodomy.   (Respt's Ex. D at

17-18.)   The crimes were alleged to have occurred in March 2008.   On July 22, 2010, a jury

found Muhammad guilty of forcible rape.   *Id.* at 94-97.   The court sentenced Muhammad to 20

years in prison.   *Id.* at 104-07.

---

[1]   The Court having been advised that Muhammad has been transferred to the Moberly
Correctional Center, Dean Minor, the Warden at Moberly Correctional Center, will be substituted
for Ian Wallace as the Respondent in this action.   *See* Rule 2(a), Rules Governing Section 2254
Cases in the United States District Courts.

Muhammad raised two points on direct appeal of his convictions. (Respt's Ex. B.) In his first point, Muhammad argued that the trial court plainly erred by failing to inquire into the discontent that existed between Muhammad and defense counsel before determining whether to appoint substitute counsel. (Respt's Ex. B at p. 17.) He next argued that the trial court abused its discretion in failing to quash the venire panel after a venireperson passed out in front of the panel. *Id.* at 19. On November 8, 2011, the Missouri Court of Appeals affirmed Muhammad's conviction. (Respt's Ex. E.)

Muhammad filed a *pro se* motion for post-conviction relief under Rule 29.15. (Respt's Ex. F.) After appointment of counsel, Muhammad filed an amended post-conviction relief motion and request for evidentiary hearing, in which he alleged the following ineffective assistance of counsel claims: (1) trial counsel failed to locate, interview, and call as a witness Christian Clayborne; (2) trial counsel failed to locate, interview, and call as a witness Khaleed Salama and Penny Hubbard; and (3) trial counsel failed to advocate that Muhammad receive a more favorable sentencing disposition by calling witnesses on his behalf and failing to correct the court regarding Muhammad's prior criminal history. *Id.* On May 29, 2013, the motion court denied Muhammad's amended motion and his request for an evidentiary hearing. (Respt's Ex. H.)

In his appeal from the denial of post-conviction relief, Muhammad raised the same ineffective assistance of counsel claims that he raised in his post-conviction motion. (Respt's Ex. J.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. L.)

Muhammad filed the instant Petition on June 9, 2014. (Doc. 1.) He raises 32 grounds for relief. In his first five grounds for relief, Muhammad raises the following claims previously raised in state court: (1) the trial court erred in failing to conduct an adequate inquiry into his discontent with trial counsel and in failing to appoint new counsel; (2) the trial court failed to grant

a mistrial after a venire person fainted; (3) trial counsel was ineffective in failing to call Christian Claybourne to testify at trial; (4) trial counsel was ineffective in failing to call Khaleed Salama and Penny Hubbard to testify at trial; and (5) trial counsel was ineffective in failing to call witnesses and in failing to correct the court about his criminal history at his sentencing.

In grounds 6 through 32, Muhammad raises for the first time ineffective assistance of counsel claims. Muhammad alleges in the following grounds of the Petition that *post-conviction counsel was ineffective* for not raising the *ineffectiveness of trial counsel* as to trial counsel's: (6) failure to file a motion for change of venue as requested by Muhammad; (7) failure to familiarize herself with his case, prepare for trial, investigate witnesses, or visit him; (8) failure to file a motion to disqualify the trial judge; (9) failure to move to waive a jury trial upon Muhammad's request; (10) failure to present evidence at the sentencing phase of his trial; (12) failure to object to and preserve for review the prosecutor's knowing use of false statements; (13) failure to object to and preserve for review the prosecutor's wrongful actions in arguing outside of the evidence during closing argument; (14) failure to object to and preserve for review that the trial court erred in finding Muhammad a persistent offender; (15) act of urging the jury to convict him of a lesser offense; (16) failure to call the treating physician as an expert witness; (17) failure to request a hearing under the Missouri Rape Shield Statutes; (18) failure to object to the admission of DNA evidence; (19) failure to object to and preserve for review the wrongful admission of DNA evidence; (20) failure to offer expert testimony regarding the DNA evidence; (21) failure to secure the state's plea offer; (22) failure to investigate and call Khalilah Green, Steve Powell, Deshell Harris, and the Secretary of the Youth Program as character witnesses; (24) overall ineffectiveness at trial resulting in the trial being nothing more than a sham and a mockery of justice; (25) failure to preserve for review the claim that the trial court erred in denying Muhammad's motion to proceed *pro se*; (26) failure to object to and preserve for review the claim that the prosecutor

violated *Brady v. Maryland*; (28) failure to impeach key prosecution witnesses with prior inconsistent statements; (29) failure to investigate and produce records showing the victim's propensity for lying; (30) failure to cross examine witnesses based on pre-trial statements; (31) failure to call impeachment witnesses; and (32) failure to adequately demonstrate the victim's prior inconsistent statements via cross-examination of the victim. (Doc. 1 at 15-24.) In two grounds of the Petition, Muhammad argued that *direct appeal counsel* was ineffective: (23) in failing to raise on appeal that the trial court erred in overruling his Motion for Judgment of Acquittal because there was insufficient evidence to support the verdict; and (27) in failing to raise on appeal the claim that the trial court erred in forcing counsel on Muhammad. *Id*. at 21-22, 23. Finally, Muhammad argued in ground eleven that *post-conviction counsel* was ineffective for failing to raise in the initial stage of the post-conviction proceeding that the *trial court erred* in releasing the probation officer's sentencing recommendation during the sentencing phase. *Id*. at 18.

On October 14, 2014, Respondent filed a Response to Order to Show Cause, in which he argues that the first ground for relief along with grounds 6 through 32 are procedurally defaulted, and all of Muhammad's claims fail on their merits. (Doc. 11.)

Muhammad has filed a Traverse (Doc. 27), as well as other pleadings and exhibits, in which he provides further argument in support of his grounds for relief.

## II. Facts

The Court's summary of the facts below is taken directly from the decision of the Missouri Court of Appeals affirming Muhammad's conviction. (Respt's Ex. E at 3-4.)

In March 2008, Muhammad was an employee at the Mark Twain Community Resource Center in a program designed to assist at-risk youths. S.A., who was sixteen years old, was a participant in the program. On March 18, 2008, S.A. called Muhammad and asked him for a ride

home from her sister's house.   Muhammad picked her up and then took her to Imo's for something to eat.   While riding in the car, S.A. mentioned that she wanted to take a YMCA trip to Milwaukee but that she did not have the $45-50 necessary to participate.   Muhammad offered to help S.A., suggesting that she could clean his house.   S.A. agreed and Muhammad drove them to his house where S.A. helped Muhammad pick things up off the floor.   Muhammad then turned down the lights and pulled S.A. toward him.   S.A. told him to stop playing but Muhammad continued to pull her toward him and pulled off her jeans and underwear.   Muhammad eventually pulled S.A. onto the bed, got on top of her, and put his penis into her vagina.   After he finished, Muhammad told S.A. to go into the bathroom and wash up.   When she refused, he took her into the bathroom, gave her a rag and told her that "all that crying couldn't turn him on like she should have."   Muhammad then took S.A. home and gave her $40.

S.A. reported the incident to a neighbor who was involved in the community program. The neighbor drove S.A. to the police station and the hospital, where a rape kit was collected. DNA from seminal fluid on the vaginal swab contained a mixture of S.A.'s and Muhammad's DNA.   Muhammad's DNA was also recovered from cuttings on S.A.'s underwear and swabs taken from S.A.'s cheek, lower perineum, thigh, and rectum.

The jury found Muhammad guilty of forcible rape and not guilty on the remaining counts.

### III.   Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Procedural Default

Respondent contends that Muhammad procedurally defaulted Ground 1 and Grounds 6 through 32, by failing to properly raise the claims in state court.

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark*

*v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)).   Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).   A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition.   *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)).   Claims that are not fairly presented to the state courts are procedurally defaulted.   *See id.* at 1022.

In cases of procedural default, federal courts are barred from reaching the merits of the defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations.   *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).   A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's] efforts to comply with the State's procedural rule" in order to show "cause" for procedural default.   *Murray v. Carrier,* 477 U.S. 478, 488 (1986).   "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable.   *Id.*   If a petitioner cannot show 'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted.   *See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir. 1987).

To invoke the alternative miscarriage of justice exception to the procedural default rule, a petitioner must present new evidence affirmatively demonstrating that he is innocent of the crime for which he was convicted.   *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006).

"'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

## V.  Muhammad's Claims

As previously noted, Muhammad asserts 32 grounds for relief.   The undersigned will discuss Muhammad's grounds for relief in turn.

### 1.a.    Ground 1, Procedural Default

Muhammad argues that the trial court erred in failing to conduct an adequate inquiry into the "source, substance, or truth" of his discontent with trial counsel and in failing to appoint new counsel on this basis.   (Doc. 1 at 16.)   Respondent argues that this claim is procedurally barred because Muhammad failed to preserve the claim for direct appellate review by not raising it in his motion for new trial.

Muhammad raised this claim in his direct appeal.   The Missouri Court of Appeals first noted that Muhammad conceded that he failed to preserve this issue for appellate review. (Respt's Ex. E at 6.)   The court explained that "[u]pon plain error review, the defendant must show that an evident, obvious, and clear error affected a substantial right resulting in manifest injustice or a miscarriage of justice." *Id.* (citations omitted).   The court then held as follows:

> Here, the record indicates that Appellant and defense counsel disagreed over trial strategy, which is an insufficient basis to require substitution of counsel. While Appellant alleged that he had not communicated with counsel, counsel contradicted this assertion before Judge Grady, stating that she communicated her trial strategy to Appellant via letter.   Defense counsel also advised Judge Grady that she responded to this accusation before Judge Ohmer prior to trial.   Contrary to Appellant's assertions, the trial court did investigate the possibility of substituting defense counsel, yet Appellant failed to present any evidence of "justifiable dissatisfaction" with his counsel.   In light of counsel's assertions to

the contrary and Appellant's failure to present the court with any objective evidence that there was a total breakdown of communication between him and defense counsel, Appellant failed to make a showing of justifiable dissatisfaction or irreconcilable conflict with his appointed counsel justifying substitution of counsel. The trial court did not commit plain error in conducting additional inquiries and investigation into Appellant's alleged conflict with his appointed counsel.

*Id.* at 7-8.

Muhammad does not dispute that he failed to preserve the claim asserted in Ground 1 for appellate review resulting in the procedural default of Ground 1. He does not argue cause or prejudice for this default but, rather, contends that the State appellate court's plain error review cures the procedural default.

Until recently, there was a split within the Eighth Circuit regarding whether plain-error review by a state appellate court waived a procedural default, and courts were permitted to choose which line to follow. *Clark v. Bertsch,* 780 F.3d 873, 876 (8th Cir. 2015) (*comparing Toney v. Gammon,* 79 F.3d 693, 699 (8th Cir. 1996) and *Hayes v. Lockhart,* 766 F.2d 1247, 1253 (8th Cir. 1985) (state court's plain-error review does not excuse procedural default) *with Thomas v. Bowersox,* 208 F.3d 699, 701 (8th Cir. 2000), *Bannister v. Armontrout,* 4 F.3d 1434, 1445 n. 6 (8th Cir. 1993) and *Williams v. Armontrout,* 877 F.2d 1376, 1379 (8th Cir. 1989) (state court's plain-error review permits federal review)). In 2011, the Eighth Circuit, sitting *en banc,* directed that, in the event of an intra-circuit split, future panels were to "determine and follow the earliest precedent." *Id.* (*citing Mader v. United States,* 654 F.3d 794, 800 (8th Cir. 2011)). The Court then determined that the earliest controlling panel opinion on the effect of plain-error review is *Hayes,* which held that such claims are procedurally defaulted and unreviewable, absent cause and prejudice. *Id.* (*quoting Hayes,* 766 F.2d at 1253).

The Missouri Court of Appeals' discretionary plain-error review of Muhammad's unpreserved claim cannot excuse his procedural default. Thus, the first ground is procedurally defaulted.

**1.b.    Ground 1, Merits**

Not only is the first ground procedurally defaulted, it also fails on its merits. The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to counsel. U.S. Const. Amend. VI. The right to counsel, however, does not include the appointment of an attorney who will advance meritless theories, proceed according to a defendant's wishes, or develop a close relationship with the defendant. *See United States v. Rodriguez,* 612 F.3d 1049, 1055 (8th Cir. 2010) (citations omitted). Nor does the right bestow on a defendant "the absolute right to counsel of his own choosing." *Carey v. Minnesota,* 767 F.2d 440, 441 (8th Cir. 1985).

Whether to grant a request for substitute counsel is a matter of the trial court's discretion. *Nerison v. Solem,* 715 F.2d 415, 418 (8th Cir. 1983). To obtain a new attorney, "the defendant must show justifiable dissatisfaction with his appointed counsel." *Id.* Possible circumstances include "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir. 1991). When a defendant makes an ostensibly valid complaint about his lawyer, the court "has an obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction." *United States v. Hart,* 557 F.2d 162, 163 (8th Cir. 1977). A defendant's refusal to communicate with his attorney will not suffice, *Hunter v. Delo,* 62 F.2d 271, 274 (8th Cir. 1995), nor will "a defendant's frustration with counsel's performance or disagreement with his tactical decisions," *United States v. Boone,* 437 F.3d 829, 839 (8th Cir. 2006).

Counsel, Assistant Public Defender Katrina Jones, filed a motion to withdraw on April 9,

2010, in which she stated that Muhammad had terminated her representation in writing. (Respt's Ex. D at 48-49.) On April 14, 2010, Judge Steven R. Ohmer (a pretrial judge) held a hearing on the motion. Muhammad *withdrew his request to discharge counsel* during the hearing and Judge Ohmer denied defense counsel's Motion to Withdraw. *Id.* at 50. Judge Ohmer continued the case to July 19, 2010.

During the pretrial conference on July 19 before Judge Thomas C. Grady, 22nd Judicial Circuit, Division 21, defense counsel stated that she wanted to renew her motion to withdraw. (Respt's Ex. A at 6.) Counsel indicated that in March of that year it was clear that she and Muhammad had a "conflict of interest in the file on certain major points," and that Muhammad "really wanted a Muslim attorney." *Id.* Defense counsel further explained that she was simultaneously representing Muhammad in a separate misdemeanor domestic violence case in which Muhammad had "renewed or filed a motion to terminate [her] from representing him on the second case." *Id.* at 9. Judge Grady questioned Muhammad regarding whether he wished to have his attorney withdraw and proceed *pro se*. Muhammad stated that he wanted counsel to withdraw, did not want to proceed *pro se*, and that he wanted substitute counsel to be appointed. *Id.* at 9-11. This issue had been discussed previously with Judge Ohmer in April. At that time, Muhammad changed his mind and decided he wanted to proceed with Ms. Jones as his attorney. During the initial pretrial conference, Judge Grady commented:

> . . .what we have here is a kind of minuet that is a procedural minuet or a square dance that's going on here. And one minute somebody wants the lawyer. The next minute they don't want the lawyer. Then they want that lawyer again. And this hog caller is not going to tolerate that. We are going to have a straight line thing here, and there's not going to be any music. There's not going to be any square dances procedurally. And it is going to be a nice, quiet, fair trial so that the jurors are respected in their dignity and so that the defendant's rights are respected.

*Id.* at 13.

Judge Grady then called Ms. Jones' supervisor, James Frazier, who testified that, if there was mere discontent or disagreement with an attorney and no conflict of interest, the public defender's office's policy was not to reassign within the office. *Id.* at 17. He explained that honoring such requests was unworkable as they'd be making reassignments all of the time if the standard was simply that the defendants were not happy. *Id*. at 18. To support his dissatisfaction, Muhammad claimed that Ms. Jones had not spoken with him in person prior to the trial. *Id.* at 19. Judge Grady directed Mr. Frazier to investigate the matter further. Judge Grady also instructed the parties to appear before Judge Ohmer[2] regarding Muhammad's request for substitute counsel as he wanted Judge Ohmer's input on the issue. *Id.* at 20-21. That very day, after holding a hearing regarding Muhammad's request for substitute counsel,[3] Judge Ohmer denied counsel's motion to withdraw. (Respt's Ex. D at 5.) Later that afternoon, Judge Grady held the final pretrial conference for the case, including review of motions in limine. The case was reconvened for jury selection the following morning and concluded at 6:10 p.m., July 20.

The next morning (July 21, 2010), before the jury was brought in, Muhammad stated to Judge Grady that Ms. Jones had not discussed the case with him that morning, and that he was unprepared for trial. (Respt's Ex. A at 259-60.) Muhammad stated that he was not requesting additional time but, rather, did not want Ms. Jones to represent him. *Id.* at 260. Upon questioning by the court regarding whether she was prepared to proceed, Ms. Jones stated as follows:

Your Honor, I am still prepared to go forward with *my theory for the last two*

---

[2]   The trial judge explained Judge Ohmer's role in this matter as follows: "Judge Ohmer is the chief criminal felony assignment judge for our circuit in which we have a central control division assigning all felony cases out at random to the divisions. And until they are assigned out, Judge Ohmer retains jurisdiction of the pretrial motions." (Respt's Ex. A at 565.)

[3]   There is no transcript of this hearing in the record.

*years*.   He's not agreed with it, but under the guidelines of representation and not by any order of my office *I have explained to him in letter and for months* what my theory would be.

*Id.* at 261-62 (emphasis added).   Muhammad denied knowing Ms. Jones' theory of the

case.   *Id.* at 262.   Judge Grady replied:

Judge Ohmer has gone through this downstairs in great detail, and he is on the record.   His discussions with you are on the record.   So I am not going to delay this case anymore.

*Id.* at 262.

The jury was called in and sworn.   Ms. Jones then requested a sidebar wherein she

announced that Muhammad asked her if he could waive his right to the jury.   Judge Grady was

aggravated by the inquiry as the jury had been sworn and stated that he felt he was "being gamed"

and didn't "appreciate it."   *Id.* at 263.   Judge Grady expressed his view that Muhammad's

averments that Ms. Jones had not seen him in two and a half years were incredulous and that he

"assume[d Ms. Jones] responded to that downstairs with Judge Ohmer."   *Id.* at 263-64.   Ms.

Jones indicated that she did answer that question to which Judge Grady replied, "I am satisfied

with that ruling and that will be the law of the case."   *Id.* at 264.

The record reveals that, contrary to Muhammad's depiction of the proceedings, the trial

court did inquire into the source of Muhammad's discontent with counsel.   In fact, Judge Grady

was emphatic about resolving "these what you call wrinkles, because then that distracts from the

orderly and fair trial that we have got to get to here."   *Id.* at 12.

The record shows that on the first day of trial, Muhammad informed the court that he

believed counsel had not communicated effectively with him, and that he disagreed with

counsel's trial strategy.   Judge Grady understood that Muhammad did not want to be represented

by Ms. Jones and that "she share[d] with [Muhammad] a concern about their long standing

differences involving this case." *Id*. at 15.   The Missouri Court of Appeals held that Muhammad's disagreement with counsel regarding trial strategy was an insufficient basis to require substitution of counsel, and that counsel's testimony contradicted Muhammad's accusation that she had not communicated with him before the trial.

As Judge Grady described it, Muhammad was raising a "private irritation" between lawyer and client which was related to trial strategy and "these things happen during trial."  *Id*. at 261.   It is also worth noting that on the day Muhammad claimed he had not communicated with his attorney regarding trial strategy, he also claimed that trial counsel notified him the day before "that she could not represent me to the full extent of her ability because her supervisors were mad at me for some reason."  *Id*. at 259.   In Ground 21, Muhammad indicates trial counsel communicated a plea offer from the State that he now claims trial counsel should have secured. *Id*. at 556-57; Doc. 1 at 21.   Muhammad's own arguments support that he had ongoing communications with trial counsel prior to trial.   There is sufficient evidence in the record to support the court's finding that Muhammad's dissatisfaction with his attorney was not justifiable. Thus, the State court's determination was not contrary to or an unreasonable application of law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.   The first ground for relief is denied.

### 2.      Ground 2

In his second ground for relief, Muhammad argues that the trial court erred in failing to grant a mistrial when a venire person fainted after the prosecutor asked whether any members of the panel had been victims of a sexual crime.   Muhammad contends that this incident "tainted the other venire members, and negatively affected Petitioner Mr. Muhammad's right to a fair trial and impartial jury."   (Doc. 1 at 16.)

During voir dire, the prosecutor asked the venire members whether they or their friends or family members had ever been a victim of a sex crime. (Respt's Ex. A at 76.) After several members of the panel responded affirmatively to this question, Juror 352 requested a side bar. *Id.* at 85. Juror 352 approached the bench, and was noted to be "shaking badly." *Id.* She then "fell to the floor, shaking." *Id.* The court stated to the venire panel that Juror 352 was "incapacitated at the present time, so we are going to go into a temporary recess." *Id.* During the recess, defense counsel moved to strike the panel based on the Juror 352 passing out. *Id.* at 87. The motion was denied. *Id.*

When the venire panel returned to the courtroom after the recess, the court stated:

> I want to ask a question of all of you because, as you know, when we recessed for lunch at about 11:30, one of our nice jurors had a spell, I guess you would call it. That's the old time word for it. It wasn't from my observations, I thought perhaps might have been some form of a spasm of some kind. I don't know what it was. Very nice lady. And we have taken good care of her, and she is being treated, and she got quite a bit calmer when the ambulance people came.
>
> But my question to you is this: Because she came up wanting to be heard on a private matter—we never did get to that matter. We don't know what it was, and we can't—it is immaterial what it was. Are there any of you—and I want you to be honest with me. Don't be afraid to answer this question. Are there any of you who, having been in the room when this was occurring, were affected by it in such a way that it would have any coloration on your opinion of the facts as they evolve in this case? In other words, will you be affected by that and distracted by that so that you can't listen to the case here? Because it's very important that we have a fair and attentive jury and not a jury that's distracted by this particular event. So are there any of you who feel that having been in the room when this situation occurred will affect your ability to pay attention to the evidence and to give both sides of this case a fair trial and not hold this event on this very nice lady's very temporary incapacity, hold that against one of the sides, either the State or the defendant? You see what I am asking? Is it going to affect any of you in that kind of various way? Please let me know. If you want to come here to side and tell me privately, that's fine. Anybody have that problem? I see no one raising their hand.

*Id.* at 87-88.

Muhammad raised this claim in his direct appeal.   The Missouri Court of Appeals held as

follows:

> "A trial court has broad discretion in determining whether a venire panel
> should be dismissed, and the court's ruling will not be disturbed on appeal absent a
> clear abuse of discretion."   *State v. Ware*, 326 S.W.3d 512, 520 (Mo. App. S.D.
> 2010).   The trial court abuses its discretion if its ruling is clearly against the logic
> of the circumstances and the ruling is so arbitrary and unreasonable as to shock the
> sense of justice and indicate a lack of careful consideration.   *Id.*   We presume the
> trial court's denial of a motion to quash is correct, and the defendant had the
> burden of demonstrating otherwise.   *Id.*
>
> Appellant has failed to demonstrate any prejudice resulting from Juror 352
> passing out in front of the venire panel.   The trial court advised the venire
> members that it was unclear what caused the woman's collapse and asked the
> members if they were affected by the experience.   None of the panel members
> indicated that the incident would affect his or her ability to judge the case in any
> way.   The trial court did not err in denying Appellant's motion to quash the venire
> panel.

(Respt's Ex. E at 9.)

The state appellate court's determination was reasonable in light of the facts in this case

and in light of clearly established federal law.   *See* 28 U.S.C. § 2254(d)(1) and (2); *Mack v.

Caspari,* 92 F.3d 637, 642 (8th Cir.1996) (whether jurors are biased is a question of fact, and

deference is given to the state court's determination of bias), *cert. denied,* 520 U.S. 1109 (1997).

The trial court questioned the venire panel thoroughly regarding the fainting incident, and none of

the panel members indicated that they were affected by the incident.   Muhammad is unable to

demonstrate any bias of the jurors resulting from the fainting incident.   The trial court reasonably

denied petitioner's motion to quash the jury panel.   Thus, Muhammad's second ground for relief

is denied.

**Grounds 3, 4, and 5**

In Grounds 3, 4, and 5, Muhammad raises ineffective assistance of counsel claims based on trial counsel's failure to locate and interview various witnesses, including: Christian Clayborne, Khaleed Salama, and Penny Hubbard.

In order to state a claim of ineffective assistance of trial counsel, Muhammad must meet the *Strickland* standard: he must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Strickland,* 466 U.S. at 687. To establish prejudice, Muhammad must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

"[A] reasoned decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (internal citation and quotation marks omitted). However, failing to interview witnesses may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel if the petitioner can "make a substantial showing that, but for counsel's failure to interview ... the witnesses in question, there is a reasonable probability that the result of his trial would have been different." *Kramer v. Kemna,* 21 F.3d 305, 309 (8th Cir. 1994). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

There is no per se rule that failure to interview witnesses constitutes ineffective assistance because such claims turn on their individual facts. *Sanders v. Trickey*, 875 F.2d 205, 209 (8th Cir. 1989). To succeed on a claim that counsel was ineffective for failing to investigate, Muhammad may not base his claim on conclusory allegations but rather must allege what information his attorney failed to discover. *See id.* at 210. A habeas petitioner who offers only speculation that he was prejudiced by counsel's failure to investigate fails to show ineffective assistance of counsel. *Id.*

**3.**     **Ground 3**

In his third ground for relief, Muhammad claims that trial counsel was ineffective in failing to call Christian Clayborne to testify about a past incident when S.A. ("Victim") falsely accused him of rape.

Muhammad raised this claim in the post-conviction proceedings. The Missouri Court of Appeals held as follows, in relevant part:

> We note that Movant did not plead facts that Clayborne could have been located through reasonable investigation. Rather, his amended motion indicates that he does not have Clayborne's address, and he claims that he was aware of Clayborne, "what his testimony would have been, and his willingness and availability to testify and [that he] communicated that to counsel." Nothing indicates that Clayborne was locatable by reasonable investigation. Moreover, Clayborne's purported testimony, if admissible, would only have served to impeach S.A.'s credibility, and would not have negated an element of the charge of forcible rape. When the testimony of a witness would only impeach another witness without negating an element of the crime for which the movant was convicted, it fails to provide the movant with a viable defense. *Rios v. State*, 368 S.W.3d 301, 308 (Mo. App. 2012). Accordingly, trial counsel's failure to call Clayborne was not ineffective assistance of counsel. In addition, there was not a reasonable probability that the outcome would have been different had Clayborne testified. There was DNA evidence that Movant had sexual intercourse with S.A. Movant testified initially that S.A. did not go into his house on March 18, 2008, and that he did not have intercourse with her. He thereafter changed his testimony to assert that S.A. knocked on the door of his home on March 18, 2008, acting as if she needed to use his bathroom, then came out of the bathroom without any clothing over her lower body, and he stated that he did not have sexual

intercourse with her, but rather made her put her clothes back on. Movant's self-contradictory testimony flew in the face of the physical evidence that he and S.A. had sexual intercourse. Clayborne's testimony would not have changed the outcome of the case.

(Resp't's Ex. L at 7-8.)

The State court reasonably applied *Strickland*. Even if Clayborne could have been located by counsel, his testimony would not have provided a defense for Muhammad. At most, Clayborne's testimony would have impeached the credibility of Victim. In light of the DNA evidence presented by the prosecution supporting that Muhammad had sexual intercourse with Victim, Muhammad cannot show that Clayborne's testimony would have affected the outcome of the trial. Thus, Ground 3 is denied.

**4.      Ground 4**

Muhammad argues in his fourth ground for relief that trial counsel was ineffective in failing to call Khaleed Salama and Representative Penny Hubbard as witnesses at trial. Muhammad contends that these witnesses would have established that Fatiha Shahid had the motive to have Victim falsely accuse Muhammad of rape because Muhammad had "spoken up against Mr. Shahid's illegal activities and insisted on remaining a Sunni Muslim." (Doc. 1 at 16.)

Muhammad raised this claim in the post-conviction proceedings. The Missouri Court of Appeals rejected this claim, holding that the purported testimony would "at most, have shown that there was animosity between Shahid and Movant. It would not have shown that Shahid induced S.A. to falsely accuse Movant of forcible rape, and more importantly, it would not have provided Movant with a viable defense." (Resp't's Ex. L at 8.)

The decision of the state courts was not contrary to or an unreasonable application of clearly established federal law. The purported testimony of Salama and Hubbard would not have

provided a defense for Muhammad to the crime of forcible rape. Thus, counsel was not ineffective in failing to call these witnesses. Ground 4 will be denied.

5. **Ground 5**

In his fifth ground for relief, Muhammad argues that trial counsel was ineffective in failing to "advocate that Petitioner Mr. Muhammad receive a more favorable sentencing disposition by calling witnesses on his behalf, including but not limited to Captain Mitchell, Mr. Jerome Fields, Ms. Felicia Ingram, and Representatives Ms. Penny Hubbard and Jamilla Nasheed." (Doc. 1 at 17.) Muhammad also contends that counsel failed to correct the trial court's misunderstanding of his criminal history.

Muhammad raised these claims in the post-conviction proceedings. The Missouri Court of Appeals rejected the claims, finding that counsel did advocate for a more lenient sentence. (Resp't's Ex. L at 9.) The court stated:

> Trial counsel challenged the SAR, which recommended a presumptive sentence of 25 years' imprisonment. The State recommended a sentence of life imprisonment. Trial counsel pointed out that the SAR focused on Movant's arrests rather than on Movant's actual convictions, and argued that the SAR improperly used the arrests to justify a presumptive sentence of 25 years' imprisonment. Trial counsel argued that based on actual convictions that Movant's sentence should not exceed a term of fifteen years' imprisonment. Trial counsel also called a number of character witnesses at sentencing, including Movant's sister, a Muslim minister, a family friend, T.H., who is the mother of Movant's six year old daughter, and Movant's niece. The sister testified that Movant was a good man that had made mistakes, who was a good father, uncle, and brother, and whose family needed him. The minister testified that he and Movant had served as volunteer prison ministers together for nearly twenty years trying to help people and give them a second chance. The family friend stated that she knew Movant for nearly twenty years, and that he had mentored her three children and had helped to keep them on the right path when she had problems, such that all ended up going to college. T.H. testified she has known Movant for more than eight years and they have worked together on various projects to help youths and to help senior citizens. She stated that Movant is a beautiful person who introduced her to Islam, and she felt he is a healer in the community who cares about other people. T.H. claimed that Movant was "a target" of others for "many years" from others in the community and from a number of women. She

said that Movant's good outweighed his bad. Movant's niece testified that when her parents were on drugs that Movant took her and her three sisters in and took care of them, teaching them to go to school and to do something with themselves. She stated that he did everything to keep everybody out of trouble. Niece averred that Movant was like a father, and that he was always there for everybody and always helped the community. All requested leniency for Movant.

Movant argues that trial counsel should have called other witnesses rather than those who actually testified because it would have been "more reasonable" to call "more neutral" witnesses rather than family and friends. This is a strategic decision. Movant argues that trial counsel should have called Captain Mitchell, Jerome Fields, and State Representative Penny Hubbard, who worked with Movant when he counseled Muslim inmates at the St. Louis Justice Center and the Medium Security Institute and led religious services. Testimony from these individuals about his work as a prison religious counselor would have been cumulative of that of the minister who testified. Movant argues that trial counsel should have called State Rep. Jamilla Nasheed, who knew him for years "because he brought her to Islam," to testify about his history of community activities. We note that the character witnesses who testified spoke of Movant's efforts to help the community, including T.H. whom he brought to Islam, and Movant himself testified at trial about the work he did at the Mark Twain Community Center. Movant also asserts that trial counsel should have called Felicia Ingram, the head of Student Activities at St. Louis Community College at Forest Park, as he worked with her. Movant himself testified that he headed up programs at St. Louis Community College. Much of the proposed testimony about Movant's laudable community efforts would have been cumulative of the testimony actually adduced. The choice of which set of witnesses was "better" or "more reasonable" was a matter of trial strategy.

*Id.* at 9-11.

The record supports the State court's finding that trial counsel argued for leniency at Muhammad's sentencing hearing, and presented five witnesses who testified regarding Muhammad's character. Muhammad received a sentence that was less than that recommended in the SAR and by the State. Trial counsel is not ineffective for failing to adduce cumulative evidence. *See Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006). *See also Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002) ("We conclude that failure to present cumulative evidence is neither contrary to nor an unreasonable application of the governing principles found in *Strickland.*"). The decision of the State court was not contrary to or an unreasonable application of clearly established law.

Muhammad also argues that trial counsel was ineffective in failing to correct the State's assertion that his probation was revoked because he was charged with another offense. Muhammad contends that his probation was revoked because he did not attend college due to his inability to afford to do so.

The Missouri Court of Appeals held as follows regarding this claim:

> We note that the trial court had the SAR, which is purportedly the State's basis for its claim of one of the reasons why Movant's parole was revoked. Movant is not asserting that the SAR was incorrect, or that trial counsel was ineffective for failing to correct an erroneous SAR. If the State's assertion was incorrect, the trial court had the proper documentary evidence to correct it. We note that the State said an attack by Movant on a woman was one of the reasons that his parole was revoked, which means that it's also possible that it was also revoked because of his failure to attend college. Movant received less than the presumptive recommendation of the SAR, and far less than the State's recommendation of life. Movant has not shown how he was prejudiced by this alleged failure of trial counsel.

*Id.* at 12.

The decision of the State appellate court was reasonable. As noted by the court, the prosecutor stated that a new crime involving an attack of a woman was "one of the reasons" his parole was revoked. (Respt's Ex. A at 537.) As such, Muhammad's claim that his parole was revoked because he failed to attend college is not inconsistent with the prosecutor's statement. Additionally, the record shows that defense counsel attacked the SAR writer's recommendation of twenty-five years, and requested that the court consider sentencing Muhammad to fifteen years instead. *Id.* at 539. Because Muhammad was ultimately sentenced to less than the SAR recommendation, he is unable to demonstrate any prejudice from counsel's failure to correct the alleged error contained in the prosecutor's statement.

Thus, Ground 5 is denied.

**Grounds 6-32**

In Grounds 6 through 32, Muhammad raises ineffective assistance of counsel claims that he did not raise before the State courts. Specifically, he asserts ineffective assistance of post-conviction counsel claims in Grounds 6 through 22, 24 through 26, and 28 through 32. Muhammad alleges ineffective assistance of direct appeal counsel in grounds 23 and 27.

Respondent argues that Muhammad's claims are procedurally defaulted. He contends that ineffective assistance of post-conviction counsel is not cognizable as an independent claim for federal habeas relief. Respondent states that, in the event the Court finds that Muhammad intends to assert ineffective assistance of post-conviction counsel as cause for failing to raise certain ineffective assistance of trial counsel claims during the state court proceedings, his claims fail under *Martinez v. Ryan*, 566 U.S. 1 (2012).

In his Traverse, Muhammad states that he is "clearly asserting ineffective assistance of post-conviction counsel as cause for failing to raise the ineffective assistance of trial counsel claims, which is sufficient and in accordance with Supreme Court precedent." (Doc. 27 at 50.) Muhammad further states that he is "clearly asserting ineffective assistance of direct appeal counsel as cause for failing to raise the trial court error claim, which is sufficient and in accordance with Supreme Court precedent law." *Id.* at 51.

Because there is no federal constitutional right to counsel in state post-conviction proceedings, *see Coleman v. Thompson*, 501 U.S. 722, 752 (1991), claims of ineffective assistance of post-conviction counsel are not cognizable as independent claims in federal habeas corpus proceedings. *Jennings v. Groose*, No. 4:94CV1349 CDP, 2015 WL 1475663, at *3 (E.D. Mo. Mar. 31, 2015) (citing cases). Ineffective assistance of post-conviction counsel may

constitute cause, however, for a petitioner's failure to properly raise a claim of ineffective trial counsel in state court.   *Martinez*, 566 U.S. at 18.

In order to meet this narrow exception for establishing cause, Muhammad must demonstrate that the post-conviction counsel was also ineffective under the standards of *Strickland*.   Therefore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."   *Martinez*, 566 U.S. at 14.

The undersigned will discuss Muhammad's defaulted claims in turn.

**6.      Ground 6**

In his sixth ground for relief, Muhammad argues that trial counsel was ineffective for failing to file a motion for change of venue.

Under Missouri Supreme Court Rule 32.03, a criminal defendant is entitled upon timely request to a change of venue as a matter of right if charges are brought in a county of 75,000 or fewer inhabitants.   As Respondent points out, Muhammad's trial took place in St. Louis City Circuit Court, a county with more than 75,000 inhabitants.   As such, he was not entitled to a change of venue as a matter of right.

Muhammad fails to present any other grounds for a change of venue in his Petition, and has therefore failed to state a claim.   In order to comply with Rule 2(c) of the Rules Governing Section 2254 Proceedings, Muhammad must state *specific, particularized facts* which entitle him to relief *for each ground specified*.   This level of specificity is higher than the "notice pleading" required under Fed. R. Civ. P. 8(a).   *See generally Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) ("We hold that in order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to

determine, from the face of the petition alone, whether the petition merits further habeas corpus review.").   In his Petition, as filed, Muhammad alleged no facts at all that would support a motion for change of venue.   Thus, his claim that trial counsel was ineffective in failing to file a motion for change of venue lacks merit.

### 7.      Ground 7

Muhammad argues in his seventh ground for relief that trial counsel was ineffective because she "did not familiarize herself with Petitioner's case, prepare for trial or investigate, interview or call any witnesses, and also never once visited Petitioner to discuss the case and create a defense."   (Doc. 1 at 17.)

Respondent argues that Muhammad fails to state a claim because he does not include specific facts supporting his contention that counsel was ineffective as required by Rule 2. Respondent argues in the alternative that Muhammad's claim fails because, concerning the totality of the evidence before the jury, he is unable to demonstrate that the outcome of the trial would have been different but for trial counsel's allegedly deficient conduct.

Muhammad responds in his Traverse that he has clearly alleged the basis of his ineffective assistance of trial counsel claim and that even the trial court found counsel to be ineffective.

 The undersigned agrees with Muhammad that the basis of his alleged claim is clear from the face of the Petition.   It is also apparent from the State court record, which contains multiple complaints from Muhammad regarding the assistance of counsel.   Muhammad consistently reported to the trial court that counsel had not met with him in person prior to trial to prepare his defense.

After the court pronounced Muhammad's sentence, the court advised Muhammad of his post-conviction rights and questioned him regarding the effectiveness of counsel.   Muhammad again relayed his complaints that counsel did not adequately communicate with him prior to trial,

and that counsel did not present the testimony of the witnesses he had requested. (Respt's Ex. A at 554-65.) Trial counsel stated that her office had asked that she not respond, and directed her to "let him give out his grievances and he can take them on appeal." *Id.* at 559. The trial court found as follows:

> And based on the averments of the defendant, there arises a question as to whether or not he was represented in a reasonably competent manner; specifically pretrial conferencing and presentation of various evidence he sought. And the Court then, therefore, finds that the defendant has arguably been prejudiced by his lawyer's representation. And therefore finds that there is probable cause to believe he has received ineffective assistance of counsel.

*Id.* at 566.

An ineffective assistance of counsel claim lacks merit if a petitioner is unable to establish either deficient performance by the attorney or prejudice resulting from the attorney's allegedly deficient performance, both of which are required under *Strickland*. *See Siers v. Weber,* 259 F.3d 969, 974 (8th Cir. 2001) (the habeas court does not need to inquire into the deficiency of counsel's performance if no prejudice resulted from the attorney's alleged deficiencies); *Parkus v. Bowersox,* 157 F.3d 1136, 1140 (8th Cir. 1998) (the habeas court does not need to address the prejudice requirement issue when the petitioner fails to demonstrate deficient performance by the attorney). Here, the prejudice determination is dispositive.

The Court must determine whether post-conviction counsel's deficient performance caused Muhammad "actual prejudice." *McLaughlin v. Steele*, 173 F. Supp.3d 855, 870 (E.D. Mo. 2016) (citing *Coleman*, 501 U.S. at 750).

> As other district courts have noted, *Coleman/Martinez* prejudice and *Strickland* prejudice may technically be two separate inquiries, but they overlap. They are—under some circumstances—redundant. At least in this case—where postconviction counsel's deficiency was his complete failure to present a substantial claim—the two types of prejudice are inexorably related: if there is a reasonable probability that the [proceeding] would have gone differently had trial counsel been constitutionally adequate, there is necessarily a reasonable

probability that the state court would have so found had postconviction counsel properly presented that underlying claim.

*Id.* (citations and footnote omitted).

The undersigned finds that Muhammad is unable to demonstrate prejudice resulting from post-conviction counsel's failure to raise the ineffective assistance of trial counsel claim. Muhammad argued at the sentencing hearing that counsel failed to investigate and introduce the testimony of his wife, who would have testified that the Victim contacted him on multiple occasions; Cindy Bledsoe, his downstairs neighbor, who would have testified that the Victim came to his home by herself on the night of the incident; and Christian Clayborne, who would have testified that Victim falsely accused him of rape. (Respt's Ex. A at 559-60.) None of these witnesses, however, would have provided a defense for Muhammad. Victim testified that Muhammad took her to his home and forcibly raped her, after she had called Muhammad asking for a ride. The state presented DNA evidence from seminal fluid recovered from Victim's underwear and swabs taken from S.A.'s cheek, lower perineum, thigh, and rectum, matching Muhammad's DNA. *Id.* at 427-34. Muhammad fails to indicate how any of the proposed evidence could have refuted this physical evidence. In light of the overwhelming evidence of his guilt, Muhammad has not shown what trial counsel could have done differently that would have changed the outcome of the trial.

Similarly, Muhammad is unable to demonstrate prejudice resulting from trial counsel's alleged failure to prepare for trial. Despite Muhammad's multiple complaints of lack of communication with counsel, he admitted that he had communicated with counsel prior to trial through written correspondence. (Respt's Ex. A at 555.) Counsel also filed pre-trial motions on Muhammad's behalf. *Id.* at 559. The overwhelming physical evidence of Muhammad's guilt presented limited defense options for counsel to pursue. Defense counsel's strategy at trial

was to show that no force was used to support the charge of forcible rape, and that there was no physical evidence supporting the sodomy counts.   The Court notes that counsel was partially successful in that Muhammad was acquitted on the sodomy counts.   Muhammad cannot demonstrate that any amount of greater preparation by counsel could have changed the outcome of the trial.

Muhammad has failed to demonstrate prejudice resulting from trial counsel's alleged ineffectiveness to excuse his procedural default of this claim.   The Court need not, therefore, discuss whether trial counsel's performance was deficient.

## 8.      Ground 8

In his eighth ground for relief, Muhammad argues that trial counsel was ineffective in failing to file a motion to disqualify the trial court judge on the grounds that the judge was "personally biased against [him] and was in favor of the adverse party to the point that his impartiality was questionable."   (Doc. 1 at 19.)

Muhammad fails to provide specific facts to support his allegation of judicial bias.   The record of the State court proceedings reveals no such evidence of bias.   Thus, Ground 8 lacks merit.

## 9.      Ground 9

Muhammad argues in his ninth ground for relief that trial counsel was ineffective in failing to file a motion to waive a jury trial upon his request.

Prior to trial, counsel informed the court that Muhammad wished to waive his right to a jury trial.   (Respt's Ex. A at 40-44.)   The court informed Muhammad of the consequences of waiving his right to a jury trial, and instructed counsel to file a written memorandum of the waiver.   *Id.* at 42.   After conferring with Muhammad off the record, counsel stated that Muhammad "wanted to know would the option [] to waive the jury still exist after voir dire?"   *Id.*

at 43.   The court responded, "Sure, up until the time they are sworn."   *Id.*   Muhammad

indicated that he wished to wait until after voir dire to determine if he wanted to waive his right to

the jury.   *Id.*   After the jury was sworn, defense counsel informed the court that Muhammad had

just asked if he could waive his right to a jury.   *Id.* at 263.   The court denied Muhammad's

request to waive his right to the jury because the jurors had already been sworn in.   *Id.*

The record demonstrates that counsel did inform the trial court of Muhammad's desire to

waive his right to a jury, but Muhammad decided to proceed with the jury selection instead of

filing the written waiver.   Muhammad has also failed to allege any prejudice resulting from

counsel's failure to file a written waiver.   As a result, this claim lacks merit.

### 10.   Ground 10

In his tenth ground for relief, Muhammad argues that trial counsel was ineffective during

the sentencing phase in failing to "investigate, develop, and present available evidence in

mitigation of punishment, in which a comprehensive examination of Petitioner's background and

social history would have presented a far more detailed and humanizing picture of Petitioner."

(Doc. 1 at 19.)

As discussed in connection with Ground 3, counsel did investigate and present multiple

character witnesses at the sentencing.   She also disputed findings in the SAR, and argued for a

lesser sentence, and a lesser sentence was imposed.   This claim also lacks merit.

### 11.   Ground 11

In Ground 11, Muhammad argues that the trial court erred during the sentencing phase in

releasing the SAR to the Department of Corrections and the Board of Probation and Parole

because the report contained information that was "inflammatory," "false," and "that relies on

uncharged crimes."   (Doc. 1 at 19.)

Muhammad's defaulted trial error claim cannot be excused by the alleged ineffective

assistance of post-conviction counsel under *Martinez*. *Dansby v. Hobbs,* 766 F.3d 809, 833-34 (8th Cir. 2014) (declining to extend *Martinez* to claims of trial error). Muhammad has failed to allege cause or prejudice to excuse the procedural default of this claim. Further, he does not allege specific facts to support this claim, or explain how any factual error affected his sentencing. Thus, this claim will be denied.

### 12. Grounds 12 and 13

In Grounds 12 and 13, Muhammad argues that trial counsel was ineffective in failing to object to statements of the prosecutor during opening and closing arguments. Specifically, he objects to the prosecutor's statement referring to Victim being a member of the youth program in which Muhammad was a teacher; and statements regarding the location seminal fluid was found, which Muhammad claims was evidence not on the record.

The Court notes that defense attorneys frequently withhold objections during improper closing arguments for strategic reasons. *See Middleton v. Roper*, 455 F.3d 838, 850 (8th Cir. 2006). Even assuming trial counsel's decision not to object to the prosecutor's allegedly improper comments was not reasonable trial strategy, Muhammad cannot establish that he was prejudiced, as nothing in the record suggests that the result of Muhammad's trial would have been different had counsel so objected. *Bucklew v. Luebbers*, 436 F.3d 1010, 1021 (8th Cir. 2006) (to establish prejudice in ineffective-assistance claim based on failure to object to prosecutor's closing argument, petitioner must show that, but for counsel's failure to object, the result of the proceeding would have been different). Grounds 12 and 13 lack merit.

### 13. Ground 14

Muhammad argues in his fourteenth ground for relief that trial counsel was ineffective in failing to object to the trial court's finding that Muhammad was a prior and persistent offender. Muhammad claims that the evidence presented did not "comply with the requirements to support

a finding that the Petitioner was a persistent offender beyond a reasonable doubt." (Doc. 1 at 20.)

Muhammad does not explain his basis for objecting to the trial court's finding. The record shows that he was found to be a prior and persistent offender based on his convictions for robbery and stealing. (Respt's Ex. A at 403-04.) Muhammad presents no facts to refute the validity of these convictions. Thus, Ground 14 lacks merit.

### 14. Ground 15

In Ground 15, Muhammad argues that trial counsel was ineffective in "urging the Jury to convict the Petitioner of a lesser offense." (Doc. 1 at 21.)

Muhammad cites to portions of counsel's closing argument, during which she argued that the State had presented no physical evidence of sodomy, and had not presented evidence of force to support a conviction of forcible rape. (Respt's Ex. A at 514, 515, 516.)

In light of the DNA evidence in this case supporting that Muhammad had sex with Victim, counsel's strategy of challenging only the element of force required to support a conviction of forcible rape was reasonable. Moreover, counsel's overall strategy was partially successful, in that Muhammad was acquitted of the sodomy counts. Muhammad's claim, therefore, lacks merit.

### 15. Ground 16

In Ground 16, Muhammad argues that trial counsel was ineffective in failing to call Victim's "treating physician as an expert witness whose medical findings after examination of the alleged victim S.A. showed no findings of mental/physical signs consistent with any form of injury as documented." (Doc. 1 at 21.)

Muhammad does not provide the name of this "treating physician." Regardless, Muhammad is unable to demonstrate such testimony, if it were available, would be relevant to his

defense.   The State did not argue that Victim was injured.   Rather, the State alleged that Muhammad forced her to have sexual intercourse.   Thus, Ground 16 claim lacks merit.

16.   **Ground 17**

In his seventeenth ground for relief, Muhammad argues that trial counsel was ineffective in failing to request a "hearing on evidence" pursuant to Missouri's Rape Shield Statute, Section 491.015.

Muhammad does not identify the specific evidence to which he is referring or why such a hearing was necessary.   This ground for relief, therefore, fails to state a claim for habeas relief under Rule 2.

17.   **Grounds 18, 19, and 20**

In these three grounds for relief, Muhammad challenges the DNA evidence presented by the State at trial.   In Ground 18, he argues that trial counsel was ineffective in failing to object to the "lack of quality tested D.N.A." being presented to the jury without a *Frye* hearing.   (Doc. 1 at 21.)   In Ground 19, he contends that trial counsel failed to object to the wrongful admission of the DNA evidence because "there was a number of fundamental problems with the evidence as opinioned by Chromosomal Laboratories, Inc., who was obtained with funds provided by the Officer of the Public Defender."   *Id.*   Finally, in Ground 20, he claims that trial counsel failed to provide expert testimony to explain DNA testing.

Muhammad does not identify any facts to support his allegations as to the quality and reliability of the DNA evidence in his Petition, other than referring to the report of Chromosomal Laboratories, Inc.   Muhammad attached this report to his Traverse.   (Doc. 28-3.)   Although the report did note some deficiencies regarding the quality of the testing, it found that all of the conclusions from the testing "are supported by the genetic evidence," and that a "comprehensive review of the laboratory records did not reveal any notable deviations from process or errors that

would impact the stated conclusions." *Id.* at 11. It further stated that there was no indication that a sample switch occurred. *Id.*

*Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), requires that the results of a scientific procedure be admitted only if the procedure is sufficiently established such that it has gained general acceptance in its field, and Missouri trial courts make this determination in a *Frye* hearing. *See State v. Daniels,* 179 S.W.3d 273, 281 (Mo. Ct. App. 2005). "Scientific tests do not have to be conclusive to be admissible." *State v. Taylor,* 298 S.W.3d 482, 500 (Mo. 2009).

Due to the ultimate conclusion of the report that the findings of the state DNA experts were supported by the genetic evidence, a motion to exclude the state's DNA would not have been successful. Muhammad was not prejudiced due to counsel's failure to file such a motion. *Pryor v. Norris,* 103 F.3d 710, 713 (8th Cir. 1997) (no prejudice from counsel's failure to object on basis of chain of custody where there is no reason to believe that the prosecution would have failed to meet its burden if an objection had been timely made).

As to Muhammad's allegation that trial counsel failed to call an expert witness to testify about the state's DNA evidence, he fails to indicate the substance of this proposed testimony and how the testimony would have provided a defense. He cannot, therefore, demonstrate prejudice.

Consequently, Grounds18, 19, and 20 lack merit.

## 18.    Ground 21

In Ground 21, Muhammad argues that trial counsel was ineffective in failing to "secure the State's Plea Offer of the alternative Class C Felony Statutory Rape, which punishment was the range of one year to seven years by the prior/former Prosecutor Ritter who said the offer was on the table until her departure from the Prosecuting Attorney's Office." (Doc. 1 at 22.)

At the sentencing, Muhammad argued that the former prosecutor offered him "one day to seven years," if he plead guilty to second degree statutory rape, and told him that he could "pick

what day I wanted."   (Respt's Ex. A at 556-57.)   Muhammad stated that he told trial counsel that

he "will take the one day," but counsel never got back to him.   *Id.* at 557.   He testified that the

state's offer was set out in a letter from his attorney, but he did not have the letter in his

possession.   *Id.* at 563.   The trial court expressed disbelief that the State would allow

Muhammad to pick his sentence and would offer a sentence of one day for such a serious crime.

*Id.* at 564.

Muhammad has not presented any evidence to support his claim that the alleged plea offer

was available to him, and that he would have taken it had counsel not been ineffective.   Thus,

Ground 21 lacks merit.

19.     **Ground 22**

In Ground 22, Muhammad argues that trial counsel was ineffective in failing to

"investigate, interview, and call defense witnesses Khalilah Green, Steve Powell, Deshell Harris,

[and] the Secretary of the Youth Program, as character witnesses who would have testified that

the victim S.A., was not a student in the 'Youth Program' which would have refuted the State

Prosecutor's teacher/student theory that was being falsely stated to the Jury."   (Doc. 1 at 22.)

Muhammad is unable to demonstrate prejudice resulting from trial counsel's failure to call

these witnesses because testimony that Victim was not a student in the "Youth Program" would

not have provided a defense to the crimes charged.   Ground 22 lacks merit.

20.     **Ground 23**

In Ground 23, Muhammad argues that direct appeal counsel was ineffective in failing to

raise on appeal that the trial court erred in overruling his "Motion for Judgment of Acquittal" at

the close of the State's evidence.   (Doc. 1 at 22.)   He contends that the State did not provide

sufficient evidence of force or lack of consent to find him guilty of forcible rape.

This ground is procedurally defaulted because it was not included in Muhammad's motion

for post-conviction relief. *See Dansby*, 766 F.3d at 823. *Martinez* does not apply in this situation. *Martinez* applies to instances where ineffective post-conviction counsel has caused a petitioner to procedurally default an ineffective assistance of *trial counsel* claim, not an ineffective assistance of *appellate counsel* claim. *See Dansby*, 766 F.3d at 833 (declining to extend *Martinez* to claims alleging ineffective assistance of counsel on direct appeal). As such, the ineffective assistance of post-conviction counsel does not excuse Muhammad's procedural default of Ground 23. Muhammad does not otherwise allege cause and prejudice to excuse this default.

Even if this claim were not defaulted, it fails on its merits. The Victim testified that Muhammad physically forced her to have sex with him. This testimony is sufficient to support his conviction of forcible rape. Thus, appellate counsel was not ineffective in failing to raise a meritless claim. Ground 23 is denied.

**21.  Ground 24**

In Ground 24, Muhammad argues that "the record at trial was sufficient to demonstrate that trial counsel was so constitutionally ineffective that Petitioner's trial was nothing more than a sham and a mockery of justice." (Doc. 1 at 23.)

This claim is merely a characterization of the ineffective assistance of trial counsel claims asserted in previous grounds for relief, specifically Ground Seven. This ground for relief lacks merit for the reasons set out with respect to Ground 7.

**22.  Ground 25**

In Ground 25, Muhammad argues that trial counsel was ineffective in failing to "preserve for appellate review that the trial court erred in denying Petitioner's motion and oral request to proceed *pro se* because that ruling violated Petitioner's right to self-representation and due process of law, in that Petitioner made unequivocal, knowing and intelligent waiver of his right to

counsel which the trial court failed to honor, resulting in a manifest injustice." (Doc. 1 at 23.)

It is well established Federal law that the Sixth Amendment grants a defendant the right to self-representation. *Faretta v. California,* 422 U.S. 806, 820, 821 (1975) ("[t]o thrust counsel upon the accused, against his considered wish, ... violates the logic of the [Sixth] Amendment" and "[t]he Sixth Amendment, when naturally read, ... implies a right of self-representation"); *United States v. Kiderlen,* 569 F.3d 358, 364 (8th Cir. 2009) ("The Sixth Amendment grants an accused both the right to counsel and the alternative right to proceed *pro se* ").

Significantly, "the right to self-representation is not absolute. A request to proceed *pro se* is constitutionally protected only if it is timely, not for purposes of delay, unequivocal, voluntary, intelligent, and the defendant is competent." *Jones v. Norman,* 633 F.3d 661, 667 (8th Cir. 2011) (internal quotation marks and citations omitted). As the Eighth Circuit recently held in *United States v. Prucha*, 856 F.3d 1184 (8th Cir. 2017):

> "[T]he right to self-representation is unqualified only if demanded before trial." *United States v. Wesley*, 798 F.2d 1155, 1155 (8th Cir. 1986). "Once trial commences, that right is subject to the trial court's discretion which requires a balancing of the defendant's legitimate interests in representing himself and the potential disruption and possible delay of proceedings already in progress." *Id.* at 1155–56. We have routinely found requests made after the commencement of trial to be untimely. *See Kelley*, 787 F.3d at 918 (concluding motion to proceed pro se made on the morning of trial was not timely); *United States v. Wright*, 682 F.3d 1088, 1090 (8th Cir. 2012) (same); *United States v. Webster*, 84 F.3d 1056, 1063 n.3 (8th Cir. 1996) (stating motion to proceed *pro se* made during trial could have been denied by district court as untimely).

*Prucha*, 856 F.3d at 1187.

The Western District, Missouri Appellate Courts discussed the timeliness issue in *State v. Herron*, 736 S.W.2d 447, 449 (Mo. Ct. App. 1987). Their analysis follows:

> Courts reach different conclusions when considering whether a request is timely. Most courts agree that the right of self-representation must be asserted

before trial. *State v. Power, supra,* at 195; *Blankenship v. State,* 673 S.W.2d 578, 585 (Tex. Cr. App. 1984); *United States v. Smith,* 780 F.2d 810, 811 (9th Cir. 1986). The conflict arises over the definition of "before trial". Some courts conclude that the right must be asserted "within a reasonable time prior to the commencement of trial". *Russell v. State, supra,* 383 N.E.2d at 314; *People v. Windham,* 19 Cal.3d 121, 126–30, 137 Cal.Rptr. 8, 11–13, 560 P.2d 1187, 1190–92, (1977). . .Courts using this approach hold that morning of trial requests are per se untimely. *Hamiel v. State,* 92 Wis.2d 656, 285 N.W.2d 639, 649 (1979); *Russell v. State, supra* 383 N.E.2d at 315. Other courts are more lenient and allow consideration of requests that occur anytime before trial. *Blankenship v. State,* 673 S.W.2d 578, 585(Tex. Crim. App. 1984); *Chapman v. United States,* 553 F.2d 886, 893 (5th Cir.1977); *United States v. Smith,* 780 F.2d 810, 811 (9th Cir.1986); *Fritz v. Spalding,* 682 F.2d 782, 784 (9th Cir.1982). Morning of but prior to trial requests are timely under this approach. *Blankenship v. State, supra,* at 585; *Fritz v. Spalding, supra* at 784. Under either analysis, a trial court will not grant a *pro se* request if the defendant's purpose is to secure delay or tactical advantage. *Hamiel v. State, supra,* 285 N.E.2d at 649; *Fritz v. Spalding,* supra at 785. The Sixth Amendment, which grants the defendant the right of self-representation, is a "trial-centered" amendment. It is intended to ensure the defendant's right to a full and fair trial and not intended to enable the defendant to avoid or delay the trial for any unjustifiable reason. *Hamiel v. State, supra* 285 N.W.2d at 649.

*State v. Herron*, 736 S.W.2d 447, 449 (Mo. Ct. App. 1987)

The record shows that Muhammad unequivocally stated he did not want to proceed without counsel on April 14 and July 19, 2010. The record further reflects that Muhammad's last request to proceed *pro se* was untimely made on July 20 during a break toward the end of voir dire.

It appears Judge Ohmer held a *Faretta* hearing on April 14, 2010 in conjunction with Ms. Jones' written Motion to Withdraw that was filed on April 9. During the pretrial conference on July 19, Muhammad relayed the high points of that hearing to Judge Grady:

MUHAMMAD:   . . .Judge Ohmer said that me going *pro se* won't be a great idea.

JUDGE GRADY:   Well, you don't need him to tell you that, do you?

MUHAMMAD:   He made the statement that: Hell, anybody who goes *pro se* has a

fool for a client.   He was very helpful and I thanked him very much for that. . .

(Tr. 10.)

During the pretrial conference on July 19, 2010, Ms. Jones renewed her request to

withdraw.   The trial court questioned Muhammad as follows:

> THE COURT:   Mr. Muhammad, **is it your desire to represent yourself**?
>
> [Muhammad]:   <u>**No**</u>, Your Honor.

(Respt's Ex. A at 16, emphasis added.)   The record reveals that when both Judge Ohmer and

Judge Grady asked Muhammad if he wanted to proceed *pro se*, Muhammad clearly expressed his

intention not to proceed *pro se* and instead requested that the court appoint an attorney outside the

public defender's office to represent him.   The issue related to Muhammad's request for

substitute counsel was clearly addressed in the undersigned's discussion of the first ground for

relief.

The day after the pretrial conference, on the afternoon of July 20 toward the end of voir

dire, Ms. Jones relayed that Muhammad was curious if he could proceed *pro se* with her acting as

standby counsel.   Judge Grady flatly denied the request and cited applicable case law.   The

relevant portions of the exchange follow:

> MS. JONES:   Mr. Muhammad wanted me to inform the Court that he did
> desire at this time to proceed *pro se*, and he asked me if they would allow for me to
> sit as [standby] counsel. . .
>
> JUDGE GRADY:      All right.   Well, let me just indicate to you that the
> request will be denied.   And I would say if it had to do with that, there was an
> initial indication that the defendant wanted to somehow directly address these
> jurors without going on the stand by engaging in the process of *pro se* screening of
> the jurors in this process that we call voir dire, I would make a suggestion;
> hopefully maybe helpful, that he keep a tablet, and that he send you a note a about
> which ever jurors he wants to ask questions of, or general questions that he's
> interested in you addressing the jurors on, subjects that he feels are important in
> order to select the proper jury of neutral and fair people.

And so quite naturally, every person in litigation, doesn't matter whether they are a defendant in a criminal case or a plaintiff and defendant in a civil case, they usually confer with their lawyers and kind of work together as a team to select the jury. So I would encourage that.

And in denying the motion, the Court is mindful of the case of *State vs. Black*, 223 S.W.3d 149.[4] It's a Missouri 2007 case. And the *State vs. Herron*, 736 S.W.2d 447 at 449, which is a Western District, Missouri Court of Appeals case from 1987, and so forth. So - - and also the statute which is 600.051 Vernon's in nineteen - - Missouri Practice Criminal Practice and Procedure, Section 105, 1995.

So thank you.

MS. JONES: Your Honor, and I did inform him. I talked to him about the voir dire process and about me talking to the jurors. And he also wanted to know then would the Court grant the motion to proceed after the voir dire? Because I have been discussing it with him at length.

JUDGE GRADY: No. No. That motion is denied.

(Respt's Ex. A 177-78.)

It is noteworthy that prior to Muhammad's request to proceed *pro se* on July 20, both Judge Ohmer and Judge Grady asked Muhammad if he wanted to represent himself. During both of those colloquies, Muhammad flatly stated he did not want to proceed *pro se*. Before jury selection began, there was significant discussion between Muhammad and Judge Grady regarding whether or not substitute counsel should be appointed. Judge Grady repeatedly articulated his sense that Muhammad was playing games with the court and working toward gaining some sort of tactical advantage.

After the trial began and jury selection was nearly complete, Muhammad through his

---

4 "There are four requirements for a defendant seeking to waive his right to counsel and proceed *pro se*. A defendant's invocation of the right must be made unequivocally and in a timely manner, and the corresponding waiver of counsel must be knowing and intelligent." *State v. Black*, 223 S.W.3d 149, 153 (Mo. 2007) citing *State v. Hampton*, 959 S.W.2d 444, 447 (Mo. banc 1997).

counsel asked to proceed *pro se*.   In denying Muhammad's request, Judge Grady cited case law that demonstrates he was well aware of the need to consider Muhammad's interests in representing himself balanced against the potential disruption and possible delay of proceedings already in progress.   Given the special facts of this case, the trial court was well within its discretion to deny the oral motion to proceed *pro se* after jury selection had already begun. Finally, in consideration of the applicable law and Judge Grady's reasons for denying Muhammad's request to proceed *pro se*, Muhammad has failed to demonstrate the likelihood that the outcome of the proceedings would have been different had counsel preserved this issue for appeal.

Ground 25 also lacks merit.

## 23.    Ground 26

In Ground 26, Muhammad argues that trial counsel was ineffective in failing to object to, and preserve for appellate review "the prosecutor's wrong action in violating its constitutional obligation to disclose exculpatory evidence to the defendant."   (Doc. 1 at 24.)   He contends that "*Brady* was violated when statements testified to in trial were not disclosed to defense, violated *Brady v. Maryland*."   *Id.*

Muhammad fails to identify the alleged exculpatory evidence that was not disclosed to him.   This claim lacks merit.

## 24.    Ground 27

In Ground 27, Muhammad argues that direct appeal counsel was ineffective in failing to raise the claim that the trial court erred in "insisting on assigning counsel when he had refused counsel's services."

As previously discussed, *Martinez* does not apply to procedurally defaulted claims of ineffective assistance of appellate counsel.   Muhammad does not otherwise allege cause and

prejudice to excuse this default.   Thus, this claim is denied.

**25.     Grounds 28-32**

In Grounds 28 through 32, Muhammad argues that trial counsel was ineffective in failing to "impeach key prosecution witnesses with prior inconsistent statements," "investigate and produce records which existed evidencing child's propensity for lying," "failed to cross examine witnesses based on pre-trial statements," "failed to call 'impeachment witnesses'" to impeach Victim's credibility; and failed to "more vigorously cross-examine victim."   (Doc. 1 at 24-25.)

Muhammad fails to allege specific facts supporting these grounds for relief.   For example, he does not identify the "key prosecution witnesses" or their alleged prior inconsistent statements, the records allegedly demonstrating Victim's propensity for lying, the pre-trial statements, the identity of the impeachment witnesses, or how counsel could have more vigorously cross-examined Victim.   Consequently, Muhammad is unable to demonstrate prejudice.

Thus, Grounds 28 through 32 lack merit.

The undersigned has found that *Martinez* does not excuse Muhammad's procedural default of grounds Six through 32.   Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence based on "new reliable evidence that he was innocent of the crime of which he was convicted."   *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010).   Muhammad has made no such showing of actual innocence. Accordingly, these claims remain procedurally defaulted.

## VI.     Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.   *See* 28 U.S.C. § 2253(c)(2); *Hunter v.*

*Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999).   A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.   *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).   In this case, Muhammad has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2017.